UNITED STATES DISTRICT COURT
DISTRICT OF NEW MEXICO

| | | |
|---|---|---|
| BORDER NETWORK FOR HUMAN RIGHTS, ET AL, | § § § | |
| Plaintiffs, | § | CIVIL ACTION NO. |
| v. | § | |
| COUNTY of OTERO, NEW MEXICO, ET AL, | § § | 07-CV-01045-MV-WPL |
| | § | |
| Defendants. | § | |

**PLAINTIFFS' REPLY IN SUPPORT OF THEIR
MOTION FOR TEMPORARY INJUNCTION**

COME NOW Plaintiffs in the above styled and numbered cause, pursuant to Local Court Rule 7.6(c) and the Court's Order of May 8, 2008, and file this Reply to Defendants' Response in Opposition to Plaintiffs' Motion for Temporary Injunction, and would show as follows:

### A.   ARGUMENT & AUTHORITIES

**1.  Plaintiffs have satisfied all of the elements required to obtain a preliminary injunction.**

As discussed in their Motion for Temporary Injunction, Plaintiffs have satisfied all of the elements required for this Court to exercise its broad discretion by issuing a temporary injunction.  With due respect to the issues of standing, mootness, types of temporary injunctions, and remedies it raises, Defendants' Response is notable more for what it does not raise.  While Defendants make the conclusory assertion that whether Plaintiffs can ultimately prevail on the merits is in doubt, they decline to offer any factual or substantive arguments for why Plaintiffs do not prevail on this first element of the test.  Defendants do not contest that constitutional violations have occurred with any evidence, nor do they offer any facts to dispute the numerous disturbing affidavits offered by Plaintiffs.  Essentially, Plaintiffs offered substantial evidence that Defendants have turned Chaparral into a deconstitutionalized crisis zone for Plaintiff Border

Network for Human Rights and its members, and Defendants do not, and cannot, dispute the point. This Court should find that Plaintiffs have satisfied the requirement of showing a substantial likelihood of prevailing on the merits.

With regard to the second element, Plaintiffs would point out that violations of constitutional rights in and of themselves constitute irreparable harm. *Summum v. Pleasant Grove City*, 483 F.3d 1044, 1053 (10th Cir. 2007). This concept is underscored in this case when one considers that, as a result of these constitutional violations, families are torn asunder and even United States Citizen children have lost access to the educational and myriad other opportunities other children in the U.S. enjoy. The ripple effects of Defendants' violations cannot be understated. Fear of the Sheriff's Department prevents victims of crime such as domestic violence from coming forward and puts families and the community at risk. With respect to Border Network, the injury to the organization is irreparable to the extent that many of its members have been wrongfully removed from this country, while many others have fled their homes in order to avoid Defendants' unreasonable and abusive tactics. As if the repeated constitutional violations were not enough, losing its members is definitely irreparable harm for Plaintiff Border Network.

As to the third and final elements, as explained in Plaintiffs' Motion for Temporary Injunction, because Operation Stonegarden entitled Defendants to funds only as reimbursements for costs expended under the program, a temporary injunction enjoining Defendants from engaging in unconstitutional stops, searches, seizures, or racial profiling pursuant to the program would not actually cost them anything. They would still be entitled to reimbursements for constitutional law enforcement activities under the program, or, if the injunction halted all Operation Stonegarden activities for fear that Defendants cannot distinguish constitutional

enforcement techniques from those that violate the Constitution, Defendants would not make expenditures under the program, so they still would not lose any money.

Likewise, Defendants' argument that any other law enforcement agencies will be harmed by a temporary injunction is unpersuasive. This Motion is against Otero County and its individual officers, not against the federal government, its other grantees, or other agencies.

On the other hand, the harm to Plaintiffs if this Court should not issue a temporary injunction will be great. As in other cases where the Court weighed the harm suffered when constitutional violations occur against speculation regarding harm potentially suffered by Defendants if they are not allowed to continue their discriminatory conduct pending litigation, here the balance clearly tips in favor of the Plaintiffs. *See Utah Licensed Beverage Ass'n v. Leavitt*, 256 F.3d 1061, 1076 (10th Cir. 2001).

Although Defendants make vague reference to harm suffered as a result of the loss of reimbursements for over time, it is merely speculative harm, especially when one considers Defendants' ability to engage in law enforcement activities for years prior to receiving Stonegarden monies. In fact, Defendants' best argument appears to be exhorting the Court to "imagine" the possible harm to themselves. But motions are not decided on imaginary evidence, and Defendants would do well to recognize that federal courts use the power to limit the activities of law enforcement and immigration control agencies far larger than Defendants even where only one person's rights are at threat of violation. *See, e.g., Cremer v. Hernandez*, 914 F.2d 230 (5th Cir. 1990) (affirming that federal court injunction imposing procedures upon INS agents in immigration enforcement was not overly broad or onerous).

Plaintiffs, on the other hand, continue to suffer real and specific injuries such as revocation of citizenship without due process and unwarranted invasion of our homes, and have

put these violations of our most basic rights in affidavits before the Court.  Whereas a temporary injunction may inconveniently expose some of Defendants' newfound financial dependency issues, the failure to suspend Defendants' violations of the Bill of Rights compromises our shared values and the safety of Plaintiffs and the Chaparral community.  This Court should, therefore, find that Plaintiffs satisfy the third and final elements of the test, and merit the preliminary injunction.

**2.  Plaintiffs do not seek a "disfavored" preliminary injunction.**

Plaintiffs recognize that courts "have identified the following three types of specifically disfavored preliminary injunctions...: (1) preliminary injunctions that alter the status quo; (2) mandatory preliminary injunctions; and (3) preliminary injunctions that afford the movant all the relief that it could recover at the conclusion of a full trial on the merits."  *Schrier v. Univ. of Colo.*, 427 F.3d 1253, 1258-59 (10th Cir.2005) (internal quotation marks and citations omitted).  However, the injunction that Plaintiffs are seeking here does not fit into any of these categories, and thus, they should not be held to any standard other than the traditional test for temporary injunctive relief in this Circuit.

Neither Plaintiffs nor Defendants argue that Plaintiffs seek a mandatory injunction or an injunction that affords all relief that could be recovered at trial.  Nor is it true that the loss of new funding for unconstitutional raids that began a few months ago would change the status quo.  Otero County had been prohibited from conducting illegal invasions of people's houses and improper enforcement of immigration since the beginning of its existence.  Operation Stonegarden has not even existed in Chaparral for a year yet, and Otero County's unconstitutional activities pursuant thereto were challenged by this lawsuit forthwith.  As in other cases where a temporary injunction was granted to protect Plaintiffs from constitutional

violations by government agents, "it was the government's enforcement action which changed the status quo and became the impetus for this litigation." *O Centro Espirita Beneficiente Uniao Do Vegetal v. Ashcroft*, 342 F.3d 1170, 1178 (10th Cir. 2003). *See also Dominion Video Satellite, Inc. v. EchoStar Satellite Corp.*, 269 F.3d 1149, 1155 (10th Cir. 2001). It cannot be seriously argued that a temporary injunction would do anything other than require a return to the status quo of years past.

Plaintiffs seek this injunction precisely so they can restore the status quo. In this case, the Fourth and Fourteenth Amendments define the status quo. In fact, when a party seeks an injunction which alters the status quo, it is usually a mandatory injunction; whereas prohibitory injunctive relief simply preserves the status quo. *O Centro Espirita Beneficiente Uniao Do Vegetal*, 342 F.3d at 1177. The status quo is "the last uncontested status between the parties." *Id.* at 1178. The Border Network immediately began contesting Defendants' unconstitutional raids in this case. Therefore, Defendants' frightening raids cannot legitimately be considered the status quo, especially to the extent that they violate constitutional guarantees.

**3. Border Network for Human Rights is a Plaintiff in this Lawsuit.**

The majority of Defendants' arguments rely on their contention that Border Network for Human Rights does not have standing to pursue its claims in this case. This is simply not true. Plaintiffs have attached affidavits to this Reply to prove it. *See* Attachment C, Affidavits of Fernando Garcia and Martina Morales, and Attachment D, Affidavits of Elias Galvan and Luis Hernandez.

Border Network for Human Rights is a grassroots community organizing organization. Its membership spans across Southern New Mexico and West Texas and includes over 500 Latino families. In order to be a member, one simply must reside in an area that is included in

Border Network's service area and participate in committee meetings and other Border Network projects and programs. Individuals who can afford it may pay a $25 annual membership fee, but others compensate for their inability to pay by assisting in fundraising projects such as, for example, garage sales or candy sales. All of the individuals who presented affidavits regarding unconstitutional stops, seizures, and other discriminatory or coercive conduct by Defendants, including the two attached to this Reply, are members of Border Network for Human Rights in good standing. *See* Attachments C and D. Therefore, their complaints regarding Defendants continual and repeated violations of the rights of Border Network members even after this lawsuit was filed are properly before the Court.

In addition, these complaints are evidence of real injuries in fact and are persuasive evidence of the likelihood that Border Network members in Chaparral face a real and continuing threat of future injuries and discrimination. *See Tandy v. City of Wichita*, 380 F.3d 1277, 1283 (10th Cir. 2004). Defendants target low income Latino families in Chaparral, a very small community with a strong presence of Border Network members who are all also low income Latinos. In view of the repeated violations that have already occurred, it is inevitable that Border Network members and Border Network itself will continue to suffer harm as a result of Defendants activities if their unconstitutional raids are allowed to continue.

Border Network for Human Rights does not request a temporary injunction solely in order to restore the status quo and to protect its members from further harassment by Defendants. Rather, it also seeks injunctive relief to protect itself as an organization from further injury until this case can be resolved by the Court or the parties can resolve it amongst themselves. *Warth v. Seldin*, 422 U.S. 490, 511 (1975). Defendants' aggressive and discriminatory harassment of this Plaintiff's members and similarly situated families in Chaparral, forced Border Network for

Human Rights to divert resources away from its usual activities and plans and dedicate them to special programs and support for its members in Chaparral including, among other things, organizing a huge march which required chartering buses from all of its service areas to convene in Chaparral, as well as renting sound equipment and purchasing other supplies. Border Network has also had to devote substantially more staff time to serving Chaparral, requiring expenditures in hourly wages as well as fuel reimbursements and other costs. *See* Attachment C.

Border Network has expended approximately $10,000 on organizing and support activities above and beyond its normal offerings in Chaparral and they are now facing a budget deficit of almost exactly $10,000. *See* Attachment C. If Defendants are not enjoined from terrorizing Plaintiff's Chaparral membership pursuant to Operation Stonegarden, Border Network will be forced to divert more resources away from other programs to Chaparral. At this point, even their ability to make payroll this summer is questionable. *See* Attachment C. Border Network's claims are not vague speculation about possible future injuries, but are rooted firmly in fact. It has been injured and continues to face injuries in fact as a result of Defendants' unconstitutional raids. Thus, Border Network is well within its rights to request temporary injunctive relief in order to protect not only its members, but also itself from further injury pending the resolution of this litigation.

**4. Plaintiffs Have Alleged Continuing Conduct Violating Their Rights**

Defendants miss the point of Plaintiffs' Motion when they argue that an actual case or controversy was not alleged. Plaintiffs alleged that they are realistically threatened in an immediate way by Defendants continuing unconstitutional conduct, even since the filing of their lawsuit. *See* Motion for Temporary Injunction, pp. 1-4.[1] Plaintiffs have by now backed these

---

[1] In their Motion, Plaintiffs stated, among other things:

allegations up with ten affidavits showing present, adverse effects in addition to all those alleged in their complaint.

Border Network distinguishes itself from the plaintiffs in *O'Shea* and *Lyons* in few key ways. First, Border Network for Human Rights is a politically active organization, not one or a few individuals. This means that it can suffer continuing injuries like the financial ones raised above, and that it has many more members who are likely to be affected in the future. The recent evidence of members whose rights were violated by Defendants filed with the Court makes the likelihood a certainty. Second, in this case, the Otero County Sheriff actually authorized its officers to commit the offending conduct. Also, Border Network has actually suffered more than one injury at Defendants' hands, whereas there was only one past injury in *Lyons* and no actual injuries in *O'Shea*.

In these ways, this case is far more analogous to cases like *Kolender v. Lawson,* 461 U.S. 352 (1983) (holding that a plaintiff stopped by police 15 times in two years had standing because of the existence of a "credible threat" that he might again be detained); *United States v. Grace,* 461 U.S. 171, (1983) (finding petitioner had standing to challenge statute after twice being threatened with arrest for free speech); *Riggs v. City of Albequerque*, 916 F.2d 582 (10th Cir. 1990) (finding plaintiff group had standing where it alleged continuing violations); and *Hernandez*, 914 F.2d at 230 (distinguishing *Lyons* and *O'Shea*). In this case, Border Network

---

"Since the filing, of that complaint, and in some instances, within the last few weeks, Defendants have engaged in further raids and violations of Plaintiffs' constitutional rights. If Defendants are allowed to continue their immigration sweeps unabated, they will undoubtedly continue to flout the Constitution and terrorize Latino families in Chaparral." Motion for Temporary Injunction*.*, pp. 1-2.

"Defendants are increasingly threatening and violating Plaintiffs' homes and persons without warrants or probable cause to this day, and only court intervention can stop them. Because Defendants have not demonstrated even a modicum of concern regarding the allegations of Plaintiffs and others by ceasing or modifying their operations pending this litigation, and because this case could continue for several more months during which time Defendants will undoubtedly commit numerous constitutional violations, a preliminary injunction is necessary to sufficiently protect Plaintiffs and their community until the Court can issue a final judgment." *Id.*., p. 4.

for Human Rights has over twenty members whose rights have been violated by Defendants, all of which happened in less than one year. It seems only this Court can stop them from continuing.

This case is also distinguishable from others cited by Defendants because state courts and tax court are not viable options by which Plaintiffs could vindicate their rights. Abstention is not an issue or option in this case. This Court is the entity that can prevent the continuing constitutional crisis in Chaparral, and Plaintiffs have properly put their plea to do so before it.

**5.  Defendants' New Procedures Will Not Protect Plaintiffs from Further Injury**

Defendants would have this Court believe that Plaintiffs' concerns, and, in fact, this case, are moot now because they have a new written procedure regarding immigration inquiries. However, the new policy does not resolve the issues raised by this Motion or lawsuit. Plaintiffs' request for temporary injunctive relief sounds in the Fourth and Fourteenth Amendments, basic concepts in law enforcement which Defendants were unable or unwilling to apply with respect to low income Latinos in Chaparral even after two lawsuits were filed as a result of their activities.

Even if the new procedures did address exactly the violations alleged in Plaintiffs' Motion and lawsuit, it would not moot them. Voluntary cessation of allegedly illegal conduct does not deprive a court of the power to hear a case and does not make it moot. *United States v. W.T. Grant Co.*, 345 U.S. 629 (1953). *See also Defunis v. Odegaard*, 416 U.S. 312 (1974). It is the duty of the courts to beware of efforts to defeat injunctive relief by protestations of repentance and reform, especially when abandonment seems timed to anticipate suit. *See United States v. Oregon State Medical Society*, 343 U.S. 326, 333 (1952).

In addition, though it is unclear exactly who will train Defendants or what the training will consist of, what is clear is that the Sheriff is sending mixed messages about whether the new

policy represents meaningful change in Chaparral and in the Sheriff's Department. *See* Exhibit E, Alamogordo Daily News, *Sheriff's department lawsuit settled*, April 9, 2008, p. 4. The policy itself is fatally flawed and will not prevent the very violations that are a subject of this lawsuit. As discussed *supra*, Defendants are committing continuing violations, and it is highly likely that they will do so again. While Plaintiffs file their Certificate of Completion of Briefing concurrently with this Reply, they will also uphold their duty to supplement these pleadings with evidence of such violations when they occur.

Plaintiffs merely request a temporary injunction to enjoin Defendants' unconstitutional practices such as racial profiling, warrantless home invasions, pretextual stops, coercion, and harassment. The new Operational Procedure and training can co-exist with such a temporary injunction until the Court can rule on the issues presented by this case or a resolution can be reached by the parties. Regardless, since the procedures do not resolve or address all of the constitutional violations raised by Plaintiffs in this Motion, they cannot moot it.

**6. Injunctive relief should issue without the requirement of bond or other security.**

Finally, this Court has broad discretion to determine whether a bond or other security is required upon issuance of an injunction. *Continental Oil Co. v. Frontier Refining Co.*, 338 F.2d 780, 782 (10th Cir. 1964). Plaintiffs have already explained the dire financial situation of both the individual Plaintiffs in this case as well as Border Network for Human Rights (as a result of Defendants' violations). Because of the nature of the Operation Stonegarden funds—that they are only due to Defendants as reimbursements, not as payments "up front"—Defendants will not suffer financial harm if this Court issues a temporary injunction. For these reasons, Plaintiffs respectfully request that no bond or other security be required as a condition for any injunctive relief.

### B.  RE-ALLEGATION OF FACTS IN FIRST AMENDED COMPLAINT AND MOTION FOR TEMPORARY INJUNCTION

Plaintiffs re-allege every fact in the First Amended Complaint and its Motion for Temporary Injunction including all of its Attachments and incorporate the same herein for all purposes, as if fully stated, and rely on that and the attached affidavits to support their motion. *See* Attachments A, B, C, and D.

### C.  REQUEST FOR HEARING

Plaintiffs respectfully ask the Court to set this request for preliminary injunction for hearing at the earliest possible time.  However, Plaintiffs respectfully advise the Court that counsel will be in trial in another matter June 9-12, 2008 and request that any hearing on this matter not be scheduled for those dates.

### D.  CONCLUSION AND PRAYER FOR RELIEF

THEREFORE, Plaintiffs pray that this Court issue a temporary injunction to enjoin Defendants from engaging in unconstitutional stops, searches, seizures, and discriminatory activities pursuant to Operation Stonegarden pending the resolution of this case, as well as all other additional relief to which Plaintiffs may be entitled, at law or equity.

Dated: May 19, 2008

Respectfully submitted,

 /s/ Wayne Krause_____
Briana Stone (*Pro Hac Vice)*
Texas State Bar No. 24056384
Wayne Krause (*Pro Hac Vice*)
Texas State Bar No. 24032644

PASO DEL NORTE CIVIL RIGHTS PROJECT
1317 Rio Grande
El Paso, TX 79902
 915-532-3799 (phone)
 915-532-8892 (fax)

- 11 -

*and*

Olga Pedroza, Esq.
New Mexico State Bar No. 4630

P.O. Box 6342
Las Cruces, New Mexico 88006
   505-647-0472 (phone)

ATTORNEYS FOR PLAINTIFFS

CERTIFICATE OF SERVICE

I certify that a true copy of this document was filed electronically with the Court on May 19, 2008, and therefore served on counsel for Defendants, William D. Slease, Slease & Martinez, P.A., P.O. Box 1805, Albuquerque, NM 87103-1805.

/s/ Wayne Krause_____
Wayne Krause

CERTIFICATE OF CONFERENCE

This is to certify that counsel for the parties have conferred about the subject matter of the motion and Defendants oppose its content and submission.

/s/ Wayne Krause_____
Wayne Krause