IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

BORDER NETWORK FOR HUMAN
RIGHTS ET AL.,

      **Plaintiffs,**

vs.                                                No. 07-CV-01045-MV/WPL

COUNTY OF OTERO, NEW MEXICO ET AL.,

      **Defendants.**

### MEMORANDUM OPINION AND ORDER

**THIS MATTER** came before the Court on Defendants' Motion to Dismiss Plaintiff Border Network for Human Rights ("Border Network") for Lack of Standing [Doc. 31]. After considering Defendants' Motion and Memorandum [Docs. 31 & 32], Plaintiffs' Response in Opposition [Doc.37] and Defendants' Reply [Doc. 38], the Court issued an Order for Supplemental Briefing [Doc. 43]. Pursuant to the order, the parties submitted Plaintiff's Supplemental Briefing [Doc. 45] and Defendants' Response [Doc. 46], which the Court has also considered; and being otherwise fully advised finds Defendants' Motion to Dismiss is not well-taken and is **DENIED**.

### ISSUE

Defendants challenge Border Network's standing to bring suit on behalf of its members. Specifically, Defendants argue "while the individual Plaintiffs have standing as the alleged parties who were purportedly injured in fact, it is not in anyway [sic] by means of their alleged membership in the associational Plaintiff, whose interests of the membership as a whole could easily vary from the interests of the individual Plaintiffs herein." Defs.' Mem., p. 2.

Furthermore, Defendants claim "[t]he Association was not injured, and the damages sought are for the alleged injuries to individual Plaintiffs, having no connection or relationship to the association's members." *Id.* Defendants assert Border Network fails to satisfy any of the three requirements for establishing associational standing set forth in *Hunt v. Washington State Apple Advertising Comm'n*, 432 U.S. 333, 97 S.Ct. 2434, 53 L.Ed.2d 383 (1977). *See* Defs.' Reply, p. 2.

## ANALYSIS

"In every federal case, the party bringing the suit must establish standing to prosecute the action." *Elk Grove Unified Sch. Dist. v. Newdow*, 542 U.S. 1, 11, 124 S.Ct. 2301, 159 L.Ed.2d 98 (2004); *see Southway v. Cent. Bank of Nig.*, 328 F.3d 1267, 1274 (10th Cir. 2003) (plaintiff bringing suit in federal court must establish standing by preponderance of the evidence). The Supreme Court has determined that the "irreducible constitutional minimum of standing" includes the following three elements: 1) an injury in fact; 2) a causal connection between the injury and the challenged conduct; and 3) a likelihood that the injury will be redressed by a favorable decision. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992) (citations omitted).

In *Warth v. Seldin*, the Supreme Court recognized that an organization may have standing as the representative of its members. 422 U.S. 490, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975). The Supreme Court articulated a three-part test for establishing associational standing in *Hunt, supra*. According to *Hunt*, an association has standing to bring suit on behalf of its members when: (a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief

requested requires the participation of individual members in the lawsuit. 432 U.S. at 343. The first two prongs of this test are constitutional, while the third prong is prudential. *United Food & Commer. Workers Union Local 751 v. Brown Group*, 517 U.S. 544, 555, 116 S.Ct. 1529, 134 L.Ed.2d 758 (1996).

The first prong of the associational standing test requires "an organization suing as representative to include *at least one member* with standing to present, in his or her own right, the claim (or the type of claim) pleaded by the association." *Id.* (emphasis added); *see John Roe # 2 v. Ogden*, 253 F.3d 1225, 1230 (10th Cir. 2001) (finding an organization had standing because one of its members had standing to sue in his own right) (citation omitted). The Supreme Court recognized that the first prong for associational standing embodies the minimal constitutional requirements for individual standing– injury in fact, a causal connection to the defendant's conduct, and redressability. *See Brown Group*, 517 U.S. at 555; *see also Am. Forest & Paper Ass'n v. EPA*, 154 F.3d 1155, 1159 (10th Cir. 1998) (citations omitted). The germaneness requirement of the second prong ensures that "the association's litigators will themselves have a stake in the resolution of the dispute, and thus be in a position to serve as the defendant's natural adversary." *Brown Group*, 517 U.S. at 555-56. Finally, the third prong focuses "on matters of administrative convenience and efficiency, not on elements of a case or controversy." *Id.* at 544. The Supreme Court has recognized that "'individual participation' is not normally necessary when an association seeks prospective or injunctive relief for its members." *Id.* at 546 (quoting *Hunt*, 432 U.S. at 343).

The Court finds that Border Network has satisfied each of the three requirements for associational standing. First, all of the individual Plaintiffs in this case are members of Border

Network.  *See* First Am. Compl., ¶ 3; Garcia Aff. ¶ 6; Morales Aff. ¶ 3.  Although Defendants question the minimal requirements for membership, *(see* Defs.' Reply, pp. 3, n.1 & 5), they do not dispute that the individual Plaintiffs in this case are members.  Moreover, Defendants concede that the individual Plaintiffs have standing on their own to bring this action as allegedly injured parties.  Defs.' Mem., p. 2; Defs.' Reply, p. 2.  This Court agrees and finds that the individual Plaintiffs in this case have alleged injuries in fact arising from the alleged actions of Defendants that can be redressed, if proven, by a favorable decision from this Court by providing the individual Plaintiffs with damages to compensate them for their injuries and by compelling Defendants to refrain from unlawful conduct in the future.  *See Brown Group*, 517 U.S. at 555; *Lujan*, 504 U.S. at 560-61; *see also Am. Forest & Paper Ass'n*, 154 F.3d at 1159.

Furthermore, in addition to the individual Plaintiffs, the following members of Border Network claim they were injured by Defendants:  Elizabeth Batista, Janeth Robles, Patricia Calderon, Lucero Betancourt, Sonia Leos, Araceli Lopez, Monica Guzman, Manuel Jesus Lopez, Elias Galvan and Luis Hernandez.  *See* Pls.' App. to Mot. for Temp. Inj., Attach. A, Exs. 1-8 (Border Network Members' Affidavits); Pls.' Reply to Mot. for Temp. Inj., Garcia Aff. ¶ 6; Morales Aff. ¶ 3; Galvan Aff. ¶ 2; Hernandez Aff. ¶ 2.  The injuries alleged by these members are similar to the injuries claimed by the individual Plaintiffs.  Furthermore, a favorable decision from this Court is likely to redress the injuries of these members, and prevent injuries to other similarly-situated members, by compelling Defendants to refrain from unlawful conduct in the future.

According to *Brown Group*, Border Network must only prove "at least one" of its members has standing to satisfy the first prong of the associational standing test.  517 U.S. at

554-55 (citing *Hunt, supra* and *Warth, supra*); *see also John Roe # 2*, 253 F.3d at 1230.  Border Network has more than met its burden with respect to this requirement.  Defendants' suggestion that *all* of Border Network's members must be injured in fact in order for Border Network to have standing is erroneous.  *See* Defs.' Mem., p. 4 (noting "other members of this organization could not" sue in support of argument that Border Network lacks standing); Defs.' Resp. to Supp. Br., p. 3 (stating "remaining members of Border Network [other than the individual Plaintiffs] would not have standing as a result of their membership.")

Defendants also argue that Border Network's members must be injured *qua* members in order for Border Network to have associational standing to represent them.  According to Defendants, "[w]hatever injuries in fact the individual Plaintiffs are alleged to have suffered herein, it has [sic] nothing whatsoever to do with their membership in the Border Network for Human Rights, nor is it [sic] even alleged to have any affect on same."  Defs.' Mem., p. 5.  Defendants assert "Plaintiffs' alleged injury must stem from or be closely associated with their membership."  Defs.' Resp. to Supp. Br., p. 2.  Defendants cite *Mountain States Legal Foundation on Behalf of Ellis v. Dole*, 655 F.Supp. 1424, 1428 (D. Utah 1987) in support of this proposition.

The Court does not agree with Defendants' interpretation of *MSLF v. Dole.*  First, in *MSLF v. Dole*, the District of Utah found that Ellis, a member of MSLF, alleged an injury in fact sufficient to satisfy the first prong of the *Hunt* test.  655 F.Supp. at 1427.  The District of Utah's discussion of the organization's purpose and relationship to its members was the subject of the second prong of the *Hunt* test– the germaneness requirement.  *Id.* at 1427-29.  Therefore, Defendants' reliance on *MSLF v. Dole* in support of their contention that Border Network has

not satisfied the first prong of the associational standing test is misplaced. *Hunt* does not condition the member standing requirement on whether the member's alleged injury stems from his or her membership in the organization, nor has the Tenth Circuit added this requirement. *See Hunt*, 432 U.S. at 343; *see also John Roe #2*, 253 F.3d at 1230 (member's standing to sue did not stem from his membership in student organization).

Second, in *MSLF v. Dole*, the District of Utah addressed the germaneness requirement with respect to an organization with "broad language of purpose." 655 F.Supp. at 1427. In its discussion, the court referenced the Tenth Circuit's opinion in *MSLF v. Costle*, 630 F.2d 754 (10th Cir. 1980), which considered the standing requirements for MSLF to bring an action individually and on behalf of its officers and members challenging an EPA administrative action as unconstitutional. *Id.* at 764. The Tenth Circuit held MSLF did not have standing because "there is nothing contained in this record showing that the officers, members and supporters of Mountain States have that necessary 'personal stake' demonstrating injury in fact." *Id.* at 767. The Tenth Circuit found the alleged injuries of the group's members to be common to all taxpayers and more appropriately asserted by the Attorney General for the State of Colorado. *Id.* at 768.

In the Tenth Circuit's discussion about the lack of individual member standing, the Circuit stated: "[t]here is no showing that [the members'] activities within the Mountain States organization have been or will be affected in any manner as a result of the challenged EPA actions." *Id.* The District of Utah interpreted this statement to impose the additional requirement that in order "for an association to have standing on behalf of its members, the members must be injured *qua* members." *MSLF v. Dole*, 655 F.Supp. at 1428. However, this

Court disagrees with this interpretation of *Costle*. The Tenth Circuit's statement was made as one example of many demonstrating the lack of injury in fact to MSLF's officers or members. *See generally Costle*, 630 F.2d at 767-68. In the context in which the statement was made, it does not appear the Tenth Circuit intended to impose new, more stringent requirements for establishing associational standing than pronounced by the Supreme Court. *See id; cf. Automobile Workers v. Brock*, 477 U.S. 274, 91 L. Ed. 2d 228, 106 S. Ct. 2523 (1986) (holding a union had standing to challenge an agency's construction of a statute even though it did not allege any injury to itself, nor was it argued that the members' associational rights were affected). Furthermore, the Tenth Circuit has not adopted the holding in *MSLF v. Dole*. *See, e.g., John Roe #2*, 253 F.3d at 1225-30 (ACLU student organization had standing to assert a claim of discrimination on behalf of one of its members even though the member's injuries are not alleged to have arisen from, or be in any way associated with, his membership in the organization). Therefore, this Court finds Border Network's members do not have to demonstrate that their alleged injuries arose from their membership in Border Network in order to satisfy the first prong of the associational standing test.

Concerning the second prong, the Court finds that the interests Border Network seeks to protect are germane to its purpose, which is to "facilitate the education, organizing and participation of marginalized border communities to defend and promote human and civil rights; the objective being that these communities work to create political economic, and social conditions where every human being is equal in dignity and rights." Pls.' Resp. Attach. 2, p. 2. Specifically, Border Network carries out its organizational goals through the direct education of its members about their constitutional rights, especially those guaranteed by the Fourth, Fifth and

Fourteenth Amendments of the United States Constitution. *See id.* at Attachs. 1-3. Through its documentation campaign, Border Network has gathered information showing that these rights are particularly vulnerable in border communities such as Chaparral, New Mexico. *Id.* at Attach. 3, pp. 2-6. Border Network also takes the information it gathers and attempts to affect change through the political process. *Id.* at Attach. 1, p. 2. Therefore, to say that alleged violations of the very rights that Border Network seeks to educate its members about and protect are not a "tight fit" with its organizational purpose is erroneous. *See* Defs.' Reply, p. 4; Defs.' Resp. to Supp. Br., p. 3.

The Court finds that Border Network's purpose is no less narrow than that of the ACLU. *See, e.g., John Roe #2, supra.* Border Network targets specific border communities and focuses it efforts on education and redressing civil and human rights violations affecting its members. Border Network joined this suit "to prevent Defendants from engaging in racial profiling, illegally stopping, searching or seizing its members and other people perceived to be immigrants, and from harassing or abusing the low income Latinos, including their members, in Chaparral." Pls.' Resp., p. 4; *see also* First Am. Compl., ¶¶ 122, 125 & 128 (alleging violations of members' constitutional and human right.) Given the issues in this case, the Court finds Border Network has a stake in the resolution of the dispute, and is a natural adversary of the defendants. *See Brown Group*, 517 U.S. at 555-56.

Concerning the third prong, the Court finds neither the claims asserted by Border Network nor the relief requested requires the participation of individual members in the lawsuit. In this case, according to the First Amended Complaint, "Plaintiffs seek reasonable compensatory and nominal damages. . . [and]. . . each claim punitive damages against

Defendants Green and Hansen and the as yet unknown Otero County Sheriff's Deputies." First Am. Compl. ¶¶ 142 & 143.  Additionally, Plaintiffs seek declaratory and injunctive relief. *Id.* at ¶¶ 145 & 146.  The First Amended Complaint does not distinguish the damages sought by the individual Plaintiffs and Border Network, thus leaving it to appear that all Plaintiffs seek damages and declaratory and injunctive relief.

However, in Border Network's Response in Opposition [Doc. 37], Border Network appears to take the position that it is only seeking declaratory and injunctive relief, but further states "it has suffered its own injuries unique to its status as an organization." *Id.* at 6-7.  Then, Border Network went on to identify in greater detail the individual harm it allegedly has suffered as a result of Defendants' actions in its Reply in Support of Their Motion for Temporary Injunction.  *See* Pls.' Reply to Mot. for Temp. Inj., pp. 5-6.  In light of these differing assertions of damages, it was unclear to the Court whether Border Network seeks damages individually as an aggrieved party, on behalf of its members, or both.  The distinction is critical to the Court's determination of the third prong of the *Hunt* test.  Typically, when damages are sought, individual participation of the aggrieved party is necessary to prove the damages.  *See Brown Group*, 517 U.S. at 553-54 (citing *Warth, supra*).  Therefore, an association usually does not have standing to assert damages on behalf of its members because it would require member participation.  *But see Brown Group*, 517 U.S. at 554 (noting there are some instances in which an association can seek damages on behalf of its members without violating the third prong of the *Hunt* test).

On July 15, 2008, the Court issued an Order for Supplemental Briefing requiring Border Network to clarify the relief sought.  In response to the Court's order, Border Network stated it

"does not seek monetary damages individually or on behalf of its members." Pls.' Supp. Br., p. 1. Border Network correctly explained that its "discussion of financial harm Border Network suffered" likely confused the issue. *Id.* at 3. Border Network further stated that if its supplemental brief "does not sufficiently clarify this issue, Plaintiffs will file a Second Amended Complaint specifying each of Border Network's claims for relief in a clear manner." *Id.* at 2.

The Court finds that because Border Network seeks only prospective injunctive relief on behalf of its members, individual member participation is not required. Border Network seeks to enjoin Defendants' from pursuing a "policy of conducting illegal stops, searches and seizures of people based on their ethnicity or national origin as well as a policy of illegal home invasions and Fourth Amendment violations." *Id.* at 3. Membership participation is not necessary to prove the existence of the alleged policy. *See Brown Group*, 517 U.S. at 546 ("'[I]ndividual participation' is not normally necessary when an association seeks prospective or injunctive relief for its members." (quoting *Hunt*, 432 U.S. at 343)); *see also Gonzalez v. Albuquerque Pub. Schs.*, 2006 U.S. Dist. LEXIS 27653 *11 (D.N.M. Jan. 17, 2006) (unpublished) (finding individual participation not necessary to prove policy of illegal searches and seizures). Furthermore, the Court notes that the individual Plaintiffs in this case are Border Network members participating in the lawsuit. While their participation is not necessary to Border Network's standing, it will likely help serve the prudential purposes of administrative convenience and efficiency.

Finally, the Court finds the First Amended Complaint does not clearly specify the relief sought by Border Network. Therefore, the Court will also treat Border Network's Supplemental Brief as a motion for leave to amend its complaint against Defendant and allow Border Network

10

to clarify the relief it seeks.  *See* FED. R. CIV. P. 15(a)(2) (leave to amend freely granted when justice requires); *see also Frank v. U.S. West, Inc.*, 3 F.3d 1357, 1365 (10th Cir. 1993) (citations omitted).

**IT IS ORDERED THAT** Defendants' Motion to Dismiss Plaintiff Border Network [Doc. 31] is denied.

**IT IS FURTHER ORDERED** that Plaintiff Border Network shall have ten (10) days from the date of this order to amend its complaint against Defendants solely for the purpose of clarifying the relief it seeks.

Dated this 19th day of September, 2008.

_____
MARTHA VAZQUEZ
UNITED STATES DISTRICT JUDGE

Attorneys for Plaintiffs:
Briana Stone
Wayne Krause
Olga Pedroza

Attorneys for Defendants:
William D. Slease
Jonlyn M. Martinez