IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

**BORDER NETWORK FOR HUMAN**
**RIGHTS ET AL.,**

      **Plaintiffs,**

vs.                                              No. 07-CV-01045-MV/WPL

**COUNTY OF OTERO, NEW MEXICO ET AL.,**

      **Defendants.**

### MEMORANDUM OPINION AND ORDER

**THIS MATTER** came before the Court on Plaintiffs' Motion for Temporary Injunction and Memorandum in Support [Doc. 28]. The Court has considered the motion, Defendants' Response [Doc. 34] and Plaintiffs' Reply [Doc. 35], and being otherwise fully advised of the premises therein, finds the motion is well-taken and a preliminary injunction will be **GRANTED.**

### A. BACKGROUND

Plaintiffs seek a preliminary injunction enjoining Defendants from engaging in "unconstitutional stops, searches, seizures and discrimination pursuant to 'Operation Stonegarden.'"[1] Pls.' Motion, p. 1; *see* Pls.' Reply, p. 11. In sum, according to Plaintiffs,

---

[1] Defendants correctly point out that the relief requested by Plaintiffs in their motion [Doc. 28] is initially unclear. In their motion, Plaintiffs seek an injunction enjoining Defendants from "engaging in unconstitutional stops, searches, seizures, and discrimination pursuant to 'Operation Stonegarden.'" Pls.' Mot., p. 1. However, they also state "[t]he only remedy of any effect is an injunction to stop Defendants from engaging in immigration enforcement activities. . . pursuant to Operation Stonegarden." *Id.* at 6 & 10. A request to enjoin "immigration enforcement activities" goes beyond a request to enjoin only unconstitutional conduct and includes lawful enforcement activities as well. In reply to Defendants' response pointing out this conflict, Plaintiffs clarify that they only seek to enjoin unconstitutional conduct in their prayer for relief. Pls.' Reply, p. 11. Furthermore, the Court notes that Plaintiffs present no argument or authority with respect to all immigration enforcement activities or even all activities undertaken pursuant to Operation Stonegarden. Therefore, the Court treats Plaintiffs' motion as one seeking an injunction to enjoin only the unlawful and unconstitutional activity alleged by Plaintiffs.

> [t]hroughout the summer months of 2007 Defendants engaged in a series of increasingly aggressive campaigns aimed at identifying and apprehending undocumented immigrants in Chaparral, New Mexico which culminated on September 10, 2007, in a community-wide series of raids targeting low-income Latino residents, including Plaintiffs. Defendants' activities were motivated by the receipt of a lucrative federal grant under the auspices of Operation Stonegarden. . . [Defendants'] operations primarily entailed going home to home in the tight-knit clusters of low-income family homes that dot the desert in Chaparal, interrogating the Latino residents about their immigration status and even invading homes without warrants or any evidence of criminal activity. In these raids, Defendants harassed, interrogated, and searched homes belonging to citizens and legal residents in addition to undocumented residents.

Pls.' Mot., p. 2. According to Plaintiffs, in Defendants' efforts to apprehend undocumented immigrants, they violated Plaintiffs' Fourth and Fourteenth Amendment rights through unlawful searches and seizures of their homes and persons, unlawful threats and intimidation, unreasonable and excessive force, racial and ethnic profiling and discrimination based upon Plaintiffs' race or national origins. *See generally* First Am. Compl. Plaintiffs claim Defendants "were acting under color of law and pursuant to official policy and custom of Otero County and implementing a program known as 'Operation Stonegarden.'" *Id.* at ¶ 13. Furthermore, Plaintiffs claim Defendants' unlawful conduct is not isolated to the summer of 2007. Plaintiffs have submitted affidavits of numerous Border Network members alleging continued harassment and unconstitutional conduct by Defendants occurring after the filing of this lawsuit in October 2007 until as recently as March 2008. *See* Pls.' Mot., Attach. A, Exs. 3-8; Pls.' Reply, Galvan Aff. & Hernandez Aff.

### B. STANDARD OF REVIEW

In order to obtain a preliminary injunction, the moving party must establish: (1) a substantial likelihood of success on the merits; (2) irreparable injury to the movant if the injunction is denied; (3) the threatened injury to the movant outweighs the injury to the party

opposing the preliminary injunction; and (4) the injunction would not be adverse to the public interest.  *See Utah Licensed Beverage Ass'n v. Leavitt*, 256 F.3d 1061, 1065-66 (10th Cir. 2001). The Tenth Circuit has adopted a modified requirement as to the likelihood of success.  If the movant has established the other three requirements for a preliminary injunction, then the movant may satisfy the first requirement "by showing that questions going to the merits are so serious, substantial, difficult, and doubtful as to make the issue ripe for litigation and deserving of more deliberate investigation."  *See Fed. Lands Legal Consortium v. United States*, 195 F.3d 1190, 1195 (10th Cir. 1999) (citing *Walmer v. United States Dep't of Defense*, 52 F.3d 851, 854 (10th Cir. 1995)).  "Because a preliminary injunction is an extraordinary remedy, the movant's right to relief must be clear and unequivocal."  *Dominion Video Satellite, Inc. v. Echostar Satellite Corp.*, 269 F.3d 1149, 1154 (10th Cir. 2001) (citation omitted).

Additionally, for certain preliminary injunctions, "the movant has a heightened burden of showing that the traditional four factors weigh heavily and compellingly in its favor before obtaining a preliminary injunction."  *Id.*  (citing *Kikumura v. Hurley*, 242 F.3d 950, 955 (10th Cir. 2001)).  The heightened burden applies to preliminary injunctions that:  (1) disturb the status quo, (2) are mandatory rather than prohibitory, or (3) provide the movant substantially all the relief it could feasibly attain after a full trial on the merits.  *Id.* at 1155.  The Tenth Circuit disfavors such injunctions.  *Id.* (citing *SCFC ILC, Inc. v. Visa, USA Inc*., 936 F.2d 1096, 1098 (10th Cir. 1991)).

## C. ANALYSIS

As an initial matter, the Court finds that a heightened burden does not apply in this case. First, Plaintiffs seek an injunction to restore the status quo to the period before the alleged

unlawful raids began occurring in Chaparral.  In the Tenth Circuit, "status quo" is defined as the last uncontested status between the parties.  *See O Centro Espirita Beneficiente Uniao Do Vegetal v. Ashcroft*, 342 F.3d 1170, 1178 (10th Cir. 2003).  As in *Dominion Video*, it is Otero County's increased efforts to apprehend undocumented immigrants pursuant to Operation Stonegarden that changed the status quo.  *See Dominion Video*, 269 F.3d at 1155.  Therefore, an injunction in this case will not alter the status quo, but instead will restore it pending the litigation.  Second, the injunction sought by Plaintiffs is prohibitory, not mandatory. *See O Centro Espirita*, 342 F.3d at 1177 (mandatory relief requires non-moving party to take affirmative action).  Finally, an injunction will not provide substantially all the relief that could feasibly be attained at trial since monetary damages have been sought by the individual plaintiffs.  *See Dominion Video*, 269 F.3d at 1156.  Therefore, the Court finds that the traditional standard for obtaining a preliminary injunction is applicable here.

    **1.**    **Irreparable Harm**

Plaintiffs claim they will suffer irreparable harm if Defendants are allowed to continue with their course of unlawful conduct.  Specifically, Plaintiffs contend that "[w]ithout an injunction, Plaintiffs and other Chaparral residents will suffer constitutional violations" including "revocation of citizenship without due process and unwarranted invasions of [their] homes."  Pls.' Mot., p. 6; Pls.' Reply, p. 3.  Plaintiffs further claim Defendants' unlawful and discriminatory conduct is not isolated, but continuing.  *See* Pls.' Reply, pp. 3, 7-9.

Defendants respond that Plaintiffs have an adequate remedy at law through a Section 1983 action seeking damages for their alleged misconduct, and therefore an injunction is not appropriate.  Defs.' Resp., pp. 3, 4 & 6.  Additionally, Defendants argue the alleged conduct is

not "particularized and imminent" and therefore an injunction would not remedy the alleged injury. *Id.* at 9.  Finally, Defendants argue that Plaintiffs' claims regarding unlawful immigration enforcement have "been rendered moot by the formal adoption of an operational procedure by the Otero County Sheriff's Department on April 4, 2008, which details how Otero County Sheriff's Deputies are to conduct themselves when making inquiries into a person's immigration status." *Id.* at 4.

In general, a " plaintiff suffers irreparable injury when the court would be unable to grant an effective monetary remedy after a full trial because such damages would be inadequate or difficult to ascertain." *Dominion Video*, 269 F.3d at 1156 (citing *Kikumura*, 242 F.3d at 963).  In this case, a monetary remedy is inadequate because it would only redress past wrongs and not prevent future unlawful conduct by Defendants.  If the Court finds Otero County deputies are acting unlawfully pursuant to an official policy of Otero County, then an injunction will be necessary to remedy the problem.  Furthermore, deprivation of constitutionally protected rights for even a minimal period constitutes irreparable harm.  *See Summum v. Pleasant Grove City*, 483 F.3d 1044, 1055 (10th Cir. 2007) ("Deprivations of speech rights presumptively constitute irreparable harm for purposes of a preliminary injunction." (citations omitted)).

Defendants argue this case is similar to *O'Shea v. Littleton*, 414 U.S. 488 (1974) and *City of Los Angeles v. Lyons*, 461 U.S. 95 (1983) in that the plaintiffs in those case, like here, "failed to show that the threatened injury was particularized and imminent." Defs.' Resp., p. 9. However, the Court finds *O'Shea* and *Lyons* are distinct from the present case.   Unlike here, in *O'Shea*, *supra*, the Supreme Court found the plaintiffs failed to allege an actual case or controversy of constitutional violations because "[n]one of the named plaintiffs is identified as

5

himself having suffered any injury in the manner specified" in the complaint. 414 U.S. at 496. Furthermore, the Supreme Court found that even if the complaint presented an existing case or controversy, the plaintiffs failed to state an adequate basis for equitable relief. *Id.* at 499-504. Finally, the Court found that the injunctive relief sought by the plaintiffs would violate the *Younger* doctrine counseling courts to exercise equitable restraint, which is not at issue in this case. *See id.* at 496-502; *see also Younger v. Harris*, 401 U.S. 37 (1971).

In *Lyons, supra*, the plaintiff sought damages arising out of injuries he received from an illegal choke-hold administered by the Los Angeles police. He also sought declaratory and injunctive relief against the city prohibiting choke-holds in all but those situations in which there is the threat of the immediate use of deadly force against the officer. The Supreme Court found that Lyons lacked standing to seek an injunction because the one episode he experienced did not establish a "real and imminent threat that he would again be stopped for a traffic violation, or for any other offense, by an officer or officers who would illegally choke him into unconsciousness without any provocation or resistance on his part." *Lyons*, 461 U.S. at 106; *cf. Riggs v. City of Albuquerque*, 916 F.2d 582 (10th Cir. 1990) (finding plaintiff group alleging continuing unlawful surveillance activity had standing). In this case, Plaintiffs allege numerous ongoing violations of their constitutional rights that indicate a continuing pattern of conduct by Defendants. *See Riggs, supra.* Furthermore, in this case, unlike in *Lyons*, Plaintiffs seek to enjoin Defendants from infringing upon their constitutionally protected rights. *See Hernandez v. Cremer*, 913 F.2d 230, 234 (5th Cir. 1990) (distinguishing *Lyons* on the basis that Hernandez was engaged in activity protected by the Constitution (citations omitted)). Moreover, unlike in *O'Shea* and *Lyons*, this Court finds that Plaintiffs have sufficiently established that there is a substantial

likelihood Defendants will continue with the same course of unlawful and harassing conduct as demonstrated by the fact that numerous Border Network members have alleged violations of their rights even after the present lawsuit was filed.  *See, e.g.,* Pls.' Mot., Attach. A; *see also O'Shea*, 414 U.S. at 496 (past wrongs are evidence bearing on whether there is a real and immediate threat of repeated injury).

Finally, the Court finds unavailing Defendants' argument that the need for an injunction is moot due to the "formal adoption of an operational procedure by the Otero County Sheriff's Department on April 4, 2008, which details how Otero County Sheriff's Deputies are to conduct themselves when making inquiries into a person's immigration status."  Defs.' Resp., p. 4. Voluntary cessation of allegedly unlawful conduct does not necessarily make a case moot.  *De Funis v. Odegaard*, 416 U.S. 312, 318-19 (1974) (citations omitted); *see Comm. for First Amendment v. Campbell*, 962 F.2d 1517, 1524 (10th Cir. 1992).  A claim becomes moot "when no reasonable expectation exists that the alleged violation will recur and interim . . . events have eliminated the effects of the alleged violation."  *Campbell*, 962 F.2d at 1524; *see United States v. W. T. Grant Co.*, 345 U.S. 629, 633 (1953) (case may be moot if "there is no reasonable expectation that the wrong will be repeated").  Here, the adoption of a formal policy on how to lawfully inquire about an individual's citizenship following the commencement of this lawsuit does not persuade the Court that Defendants' prior conduct will not be repeated.  *See United States v. Oregon State Medical Soc.*, 343 U.S. 326, 333 (1952) ("It is the duty of the courts to beware of efforts to defeat injunctive relief by protestations of repentance and reform, especially when abandonment seems timed to anticipate suit, and there is probability of resumption.") While the policy is commendable, Plaintiffs' Fourth and Fourteenth Amendment rights are not

new. Defendants' obligation to uphold the Constitution is the same now as it was before the adoption of the policy. *See, e.g., De Funis*, 416 U.S. at 318-19 (finding cessation of school admission policy did not moot issue where policy itself was not changed). Consequently, the Court finds the adoption of the policy does not moot the issue or need for injunctive relief. *See Local 167 v. United States*, 291 U.S. 293, 298 (1934) ( courts will not assume continuing practice of defendants has been abandoned without clear proof). Therefore, for the reasons stated herein, the Court finds that Plaintiffs will suffer irreparable harm absent an injunction.

### 2.    **Balance of Injuries**

The Court finds any injury to Defendants resulting from an injunction will be minimal, at most, given the fact that the conduct the Court enjoins is the unlawful violation of Plaintiffs' civil and constitutional rights. The Court does not enjoin Defendants' lawful enforcement of criminal and immigration laws, nor does the Court enjoin the use of Operation Stonegarden funds by Defendants for other legitimate law enforcement and border security operations. Therefore, the only imaginable harm Defendants could suffer as a result of this injunction is the loss of funds obtained from Operation Stonegarden through unlawful and discriminatory conduct. This Court seriously doubts the Department of Homeland Security intended to authorize funding through Operation Stonegarden for unconstitutional raids, harassment and discrimination by local law enforcement agencies. Nevertheless, any financial losses to Defendants resulting from an injunction are far outweighed by the irreparable harm suffered by Plaintiffs through the deprivation of their civil and constitutional rights. *See Summum*, 483 F.3d at 1055; *Hernandez*, 913 F.2d at 234. Therefore, the Court finds the threatened injury to Plaintiffs far outweighs the speculative financial injuries to Defendants.

### 3. Public Interest

The Court finds that an injunction enjoining Defendants from engaging in unlawful stops, searches and seizures, racial and ethnic profiling and discrimination for the purpose of apprehending undocumented immigrants is not adverse to the public interest.  Moreover, the injunction does not enjoin lawful law enforcement activities by Defendants, nor does it enjoin the use of federal funds by Defendants from Operation Stonegarden for the purposes for which they were intended– namely to help combat crime and secure the border.  However, these important security interests will not be served by trampling on the civil and constitutional rights of individuals.  Thus, the Court finds that an injunction serves the public interest by protecting our important civil and constitutional rights.

### 4. Likelihood of Success

Because this Court has found that Plaintiffs have met their burden on the above three factors, they may satisfy the showing of likelihood of success on the merits by showing "that questions going to the merits are so serious, substantial, difficult, and doubtful as to make the issue ripe for litigation and deserving of more deliberate investigation." *Fed. Lands Legal Consortium*, 195 F.3d at 1195.  The Court finds Plaintiffs have satisfied this requirement by raising serious and substantial issues affecting their civil and constitutional rights that are difficult, doubtful and ripe for litigation.  The primary issue is whether Otero County has established an official policy and authorized a course of conduct by its deputies allowing for, or mandating, the blatant disregard of Plaintiffs' civil and constitutional rights in the interest of apprehending illegal aliens in this country.  Given the seriousness of the issues and allegations in this case, the Court finds more deliberate investigation is necessary, and thus Plaintiffs have

satisfied the likelihood of success requirement under the modified standard. *See id.*

## D. BOND AMOUNT

A court may issue a preliminary injunction "only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained." FED. R. CIV. P. 65(c). The Tenth Circuit has stated the trial court has "wide discretion" in setting the amount of the preliminary injunction bond. *Dominion Video*, 269 F.3d at 1158 (citing *Cont'l Oil Co. v. Frontier Refining Co.*, 338 F.2d 780, 782 (10th Cir. 1964)). The Court finds that a security bond is not necessary in this case because there is no proof showing a likelihood of harm to Defendants resulting from the imposition of an injunction, as discussed above. *See Cont'l Oil Co.*, 338 F.2d at 782 ("[I]f there is an absence of proof showing a likelihood of harm, certainly no bond is necessary."). Furthermore, if Defendants are not engaging in unconstitutional searches and seizures or other discriminatory conduct as they claim, then an injunction enjoining them from such conduct will be of no consequence to them. Alternatively, if they are engaged in such conduct, then the injunction is rightful and a security bond to protect against wrongful injunctions is irrelevant. Therefore, the Court will not require Plaintiffs to post a security bond in this case.

**IT IS THEREFORE ORDERED** that a preliminary injunction is issued against Defendants until a final judgment is rendered in this case for the reasons stated herein. Defendants are hereby enjoined from the following:

A.   Engaging in any stops, searches or seizures, of persons, property or homes, without a valid legal justification pursuant to Operation Stonegarden.

B.   Conducting unlawful community-wide raids targeting low-income Latino

residents in Otero County for the sole purpose of identifying and apprehending undocumented and illegal immigrants pursuant to Operation Stonegarden.

      C.      Engaging in unlawful discriminatory activities and racial profiling for the purpose of identifying and apprehending undocumented and illegal immigrants pursuant to Operation Stonegarden.

      D.      Engaging in unlawful retaliation, coercion, harassment, threats and intimidation for the purpose of identifying and apprehending undocumented and illegal immigrants pursuant to Operation Stonegarden.

Dated this 19th day of September, 2008.

_____
MARTHA VAZQUEZ
UNITED STATES DISTRICT JUDGE


Attorneys for Plaintiffs:
Briana Stone
Wayne Krause
Olga Pedroza

Attorneys for Defendants:
William D. Slease
Jonlyn M. Martinez